FILED

04/17/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0270

DA 15-0270

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 93

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MARTIN VINCENT LAU,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DC 12-09
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Koan Mercer, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

            Dan Guzynski, Ole Olson, Special Deputy County Attorneys for Teton
County, Helena, Montana

            Joe W. Coble, Teton County Attorney, Choteau, Montana

Submitted on Briefs: March 21, 2018

Decided: April 17, 2018

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Martin Lau appeals his conviction for deliberate homicide in the Ninth Judicial District Court, Teton County. We affirm, addressing the following issue:

> *Did the prosecutor commit misconduct during closing argument that prejudiced Lau's right to a fair trial and warrants plain error review?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Lau fatally shot Donald Kline on August 18, 2012. The shooting occurred at the ranch home of Susan Pfeifer in Teton County. At the time, Kline was Pfeifer's live-in boyfriend, but Kline had made allegations about Lau's possible romantic involvement with Pfeifer. Kline and Pfeifer were in Choteau trying to retrieve their truck when Kline became angry and walked off. Upon Pfeifer's request, Lau picked Pfeifer up and drove to her house to look for the truck key, which Kline had apparently lost. Kline showed up unexpectedly at the house, and an altercation ensued between Lau and Kline. Lau called 911 and ended up on the front porch, locked out of the home. Lau, who claimed to be concerned about Pfeifer's safety, re-entered the home through a back door with a 9 millimeter carbine, and the altercation with Kline continued. Lau fired the weapon twice, with one shot hitting the floor, and the other striking Kline in the hand and neck at very close range. Kline later died of his injuries, and the State charged Lau with deliberate homicide.

¶3     At his four-day trial, Lau raised the defense of justifiable use of force. He claimed that he re-entered the home to protect Pfeifer because he believed Kline was drunk and abusive. Lau asserted that Kline attacked him, and he fired the first shot into the floor as a warning, and fired the second shot only after Kline struck him in the face. The State

2

asserted Lau did not have an actual or reasonable belief that he was going to be seriously injured when he shot Kline, and that Lau was the aggressor, making him ineligible for the defense of justifiable use of force.

¶4 Lau's defense was based heavily on the law, and used nearly every opportunity throughout the trial to offer his interpretation of Montana's self-defense statutes. During *voir dire*, defense counsel quoted from the expected self-defense jury instructions. In his opening statement, defense counsel further expounded on the laws governing justifiable use of force. When defense counsel sought to introduce the statutes into evidence and cross-examine the State's witnesses about them, the State objected. However, the District Court permitted the defense to "go there," reasoning that "the jury's been told over and over again that they're gonna hear the instructions from the Court," and instructing counsel that if any statement was made that was inconsistent with the instructions, they could take it up in their jury arguments. The court thus permitted Lau to ask the investigators what they knew about the justifiable use of force statutes and how their knowledge impacted the investigation. On cross examination of the investigating officer, the defense introduced selective portions of the statutes into evidence and questioned the officer about the law, including the "open carry" statute and the definition of serious bodily harm and injury. In response, on redirect, the State introduced several related statutes, including defense of an occupied structure and the aggressor statute. During closing arguments, defense counsel extensively argued the law. The prosecutor also argued about the law, and the defense interposed no objections about the State's argument.

¶5     The jury convicted Lau of deliberate homicide and the District Court sentenced Lau to fifty-two years in the Montana State Prison, with twelve years suspended. Lau appeals, arguing the prosecutor committed misconduct during closing arguments, and seeks plain error review.[1]

## STANDARD OF REVIEW

¶6     Generally, "this Court does not address issues of prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial." *State v. Ritesman*, 2018 MT 55, ¶ 12, 390 Mont. 399, ___ P.3d ___ (citations omitted). However, we may exercise discretion and review such issues under the plain error doctrine when "failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Stutzman*, 2017 MT 169, ¶ 23, 388 Mont. 133, 398 P.3d 265 (citations omitted). "We use our inherent power of common law plain error review sparingly, on a case-by-case basis, and only in a narrow class of cases." *Ritesman*, ¶ 12 (citations omitted). "Once the doctrine is invoked, this Court's review is grounded in our 'inherent duty to interpret the constitution and to protect individual rights set forth in the constitution.'" *State v. Lawrence*, 2016 MT 346, ¶ 6, 386 Mont. 86, 385 P.3d 968 (citations omitted).

---

[1] Prior to trial, we granted a writ of supervisory control in this case regarding evidentiary issues. *See State v. Mont. Ninth Judicial Dist. Court*, 2014 MT 188, 375 Mont. 488, 329 P.3d 603.

¶7 "We will not undertake full analysis of the alleged error each time a party requests plain error review." *Ritesman*, ¶ 12 (citations omitted). When the circumstances of a case do not warrant application of the plain error doctrine, we need not address the merits of the alleged error. *Stutzman*, ¶ 23 (citations omitted). "Conducting a full analysis in order to determine whether to find plain error would defeat the underlying rule that a party must object to error at trial, because errors should be brought to the attention of the trial court where they can be initially addressed." *Ritesman*, ¶ 12 (citations omitted).

## DISCUSSION

¶8 *Did the prosecutor commit misconduct during closing argument that prejudiced Lau's right to a fair trial and warrants plain error review?*

¶9 Lau argues his due process right to a fair trial was compromised by statements made by the prosecutor during closing argument. Because Lau did not object to the statements, he asks us to invoke plain error review.

¶10 Lau argues that the prosecutor's argument overstated the level of injury he needed to fear to justify the use of a firearm in self-defense. Because Lau offered evidence that he acted in self-defense, the burden shifted to the State to prove beyond a reasonable doubt that Lau was not justified in his use of force. Section 46-16-131, MCA; *State v. Daniels*, 2011 MT 278, ¶¶ 14-15, 362 Mont. 426, 265 P.3d 623. To be justified in the use of deadly force, Lau had to reasonably believe he was preventing "serious bodily harm" or "serious bodily injury." *See* §§ 45-3-102, -101, 45-5-202, MCA. Serious bodily injury includes an injury that, "at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily

5

member or organ." Section 45-2-101(66)(a)(iii), MCA. Though similar, serious bodily harm is undefined by statute and has a meaning unique from serious bodily injury. *See State v. Bashor*, 188 Mont. 397, 422, 614 P.2d 470, 484 (1980).

¶11 Lau points to this statement by the prosecutor during closing:

> [I]f someone's gonna punch you in Montana, you can't shoot 'em. Life's too valuable . . . . But if you had a reason to believe and you believe, genuinely believe that's a reasonable belief and we talked about this—only you folks will determine what's reasonable—that they would cause serious bodily injury. And you have an instruction on serious bodily injury. Injury that you're not going to walk away from. You could have broken bones, death, long-term impairment. If you reasonably believe someone is going to cause that type of harm to you, you can shoot them. But you can't shoot them if they punch you. That's what it states in instruction number 22.

Lau argues that this statement is a misinterpretation of the law and foreclosed the jury from finding a punch to the head could indeed cause a serious bodily injury or harm; and that a person could potentially "walk away" from a serious bodily injury or harm, for instance, in the case of a closed head injury that results in a concussion. In his own closing, Lau countered by arguing that serious bodily harm could indeed be caused by a single punch, and referenced several cases where a single punch caused significant injury.

¶12 Lau also argues the prosecutor improperly invited the jury to engage in statutory interpretation and to conclude that Lau's display of a weapon was a "provocation." Lau's argument is premised upon several statutes, including § 45-3-105, MCA, which provides that justifiable use of force is not available to an "aggressor" who "purposely or knowingly provokes the use of force against the person," and § 45-3-111(2), MCA, which provides "[i]f a person reasonably believes that the person or another person is threatened with

6

bodily harm, the person may warn or threaten the use of force including deadly force, against the aggressor, including drawing or presenting a weapon." This latter provision, sometimes referred to as the "open carry law," also provides that a person, unless otherwise prohibited, may "openly carry a weapon and may communicate to another person the fact that the person has a weapon." Section 45-3-111(1), MCA.

¶13 In this regard, the State argued that Lau provoked Kline and was thus ineligible to claim justifiable use of force. Lau responded in his closing argument that he did nothing to provoke Kline, and that the Legislature's enactment of the open carry law entitled him to display a weapon. In its rebuttal, the State responded as follows:

> Now the Defense makes a big deal out [of] the fact that Lau had a right to brandish his weapon in the house. You know, sure. You can brandish your weapon[,] but is it a provocation in this situation? Was it a good idea? Absolutely not. And I'll tell you what, if you went to the Montana Legislature when they were passing this and told them that that's what people were going to do, that Marty Lau was going to intervene in domestic violence situations with a semi-automatic rifle and start waiving it around, they never would have passed it. That's not what it's for.

Lau argues it was improper for prosecutors to comment on the Legislature's thinking in passing the open carry law, implying personal knowledge of the legislative proceedings, and inviting the jury to consider the intent, rather than the text, of the law. Lau also argues the State's interpretation is incorrect.

¶14 Lau did not object to the prosecutor's statements at trial, and now seeks plain error review. However, we conclude that Lau has not demonstrated that failure to review these asserted errors would result in a miscarriage of justice, raise a question about the fundamental fairness of the proceedings, or compromise the integrity of the judicial

7

process. *See Lawrence*, ¶ 11. Lau was given considerable latitude by the District Court to try the case as he wanted, including extensive use of the statutes during witness examination and argument. He adamantly argued for his interpretation of the law throughout the trial. He concedes that the jury instructions properly stated the law. His assertion that the prosecutor made brief misstatements about the law that prejudiced him, in the context of a four-day trial that focused extensively on the law, does not persuade us that plain error review is necessary to preserve the trial's integrity.

¶15    Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA