FILED

12/10/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0110

DA 23-0110

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 299N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

FRANK WAYNE REINKE,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DC 21-34
Honorable Matthew J. Wald, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy Hinderman, Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

          Nancy L. Rohde, Stillwater Couty Attorney, Ryan C. Addis, Deputy
County Attorney, Columbus, Montana

Submitted on Briefs:  October 9, 2024

Decided:  December 10, 2024

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Frank Wayne Reinke appeals his conviction in the Twenty-Second Judicial District Court, Stillwater County, of misdemeanor criminal possession of drug paraphernalia and three counts of felony criminal possession of dangerous drugs, as well as from the District Court's denial of his request for a suppression hearing. We affirm.

¶3 The charges against Reinke arose out of an incident involving his six-year-old son, R.R. On July 3–4, 2021, Reinke and R.R. were camping at Itch-Ke-Pe Park in Columbus. On the morning of July 4, 2021, another camper flagged down Columbus Police Department Officer Jarod Vance and reported that an older male was repeatedly striking a young child at a neighboring campsite. Officer Vance drove up to the campsite and observed R.R. crying and holding his hands near his chest. Reinke told Officer Vance he had spanked R.R. "for not doing what he [was] told" but denied hitting him elsewhere. Stillwater County Sheriff's Deputies Lucas Bruursema and Garrett Williams arrived to assist Officer Vance, at which point Officer Vance separated R.R. from Reinke and began questioning R.R. about what had happened with his father.

¶4 R.R. told Officer Vance that Reinke hit him several times on his buttocks and chest, and that he had hurt his arm when Reinke "hit [R.R.] into that tree." R.R. stated Reinke

2

disciplined him because R.R. did not clean up after playing in a creek. R.R. said the physical contact made him cry and did "not [feel] good at all." Officer Vance noted visible injuries on R.R.'s body, including a red mark on R.R.'s chest and an abrasion on his arm. Officer Vance arrested Reinke for assaulting R.R.

¶5 After placing Reinke in handcuffs, Officer Vance searched him and retrieved several small plastic bags from Reinke's front pocket. Officer Vance suspected the bags contained illegal drugs. Field-tests were positive for methamphetamine and morphine. Another bag held pieces of blotter paper commonly used to ingest LSD. Officer Vance and Deputy Bruursema observed a glass pipe with white residue on a cot inside Reinke's partially zipped tent, which Deputy Bruursema seized. Deputy Bruursema seized a tin box containing several suspected marijuana cigarettes from Reinke's borrowed vehicle after Officer Vance took photographs of the vehicle's interior. Deputy Bruursema collected the remaining items at the campsite, including Reinke's tent, and placed them in Reinke's vehicle.

¶6 Reinke was transported to the Yellowstone County Detention Facility while the vehicle was towed to the city impound lot. Officer Vance searched the vehicle pursuant to a search warrant. The search produced $1,580 in cash, another glass pipe with burnt residue, a blue torch-style lighter, a bag with 12.7 grams of suspected marijuana, and two pill bottles.

¶7 The District Court granted the State's Motion for Leave to File an Information charging Reinke with Count I: Assault on a Minor; Count II: Criminal Possession of

3

Dangerous Drugs (Methamphetamine); and Count III: Criminal Possession of Drug Paraphernalia. The motion was supported by an affidavit of probable cause.

¶8 Reinke moved to dismiss the assault charge and to suppress all evidence obtained after his arrest. Reinke argued that Officer Vance had insufficient probable cause to arrest him for assaulting R.R. because the body camera footage contradicted the factual claims in the affidavit of probable cause and Officer Vance lacked the requisite experience to make the arrest due to his graduation from the police academy only four days prior. Reinke argued that the assault charge should be dismissed on that basis which, in turn, necessitated suppression of the drugs and paraphernalia as fruit of an unlawful arrest. Reinke requested a hearing on the motion "if necessary."

¶9 The State responded that the motion should be denied because the affidavit of probable cause presented sufficient facts to charge Reinke with assault; the jury was in the best position to decide the factual dispute Reinke raised between the affidavit and the body camera footage; and the District Court had already determined probable cause existed to charge Reinke when it granted the State leave to file the Information.

¶10 The District Court denied Reinke's motions to dismiss and suppress without holding an evidentiary hearing. The District Court determined probable cause existed to charge Reinke with assault on a minor. The District Court noted a hearing, while generally required to resolve a motion to suppress, was unnecessary in this case because the sole basis of Reinke's motion to suppress was a question of law concerning probable cause.

4

The District Court reasoned that the court's determination of probable cause resulted in the failure of Reinke's suppression argument.

¶11 The District Court later dismissed the assault on a minor charge pursuant to the State's motion. The State amended the Information to add two additional counts of felony criminal possession of dangerous drugs after the State Crime Lab's analysis identified the other substances found in Reinke's pocket as heroin and LSD.

¶12 Prior to trial, Reinke moved in limine to exclude any reference to the alleged assault and to the uncharged items found in the car: the marijuana, the blue-torch style lighter, the second glass pipe, the pill bottles, and the $1,580 in cash. The State agreed it would not reference the assault unless Reinke opened the door to its admission through his own testimony. As to the items in the car, the State argued the pipe and torch were admissible as part of the basis for the paraphernalia charge, and the marijuana was admissible under the transaction rule and was not prejudicial because it is legal to possess.

¶13 On September 15, 2022, the District Court held a pretrial hearing at which Reinke was present. Addressing the motion in limine, the parties stated they would attempt to resolve several of the issues by stipulation. The State indicated it was unsure if an agreement would be reached as to the paraphernalia and marijuana evidence found in the car, and that it would file a trial brief by the end of the day explaining its position.

¶14 On September 19, 2022, the first day of the trial, the District Court held a conference with counsel prior to voir dire to address the outstanding issues of the marijuana and paraphernalia evidence. Reinke had not yet appeared when counsel informed the court

5

they had reached an agreement concerning the evidence that was the subject of Reinke's motion in limine. The defense withdrew its objections to the second glass pipe and the torch found in the car because counsel conceded "[they were] already charged" under the paraphernalia count. The defense also withdrew its objection to the photographs of the marijuana. For its part, the State agreed it would not introduce photographs or testimony concerning the pill bottles and the cash found in the car. Reinke arrived shortly after this exchange, whereupon the court informed him that "we've dealt with some pretrial matters" but did not explain what was discussed.

¶15 At trial, Reinke testified that he had found the drugs and the glass pipe seized from his tent on the ground at the campsite, and that he placed the drugs in his pocket and the pipe on his cot to prevent R.R. or any other children from accessing them. As to the pipe, torch, and marijuana found in the car, Reinke testified that he smoked marijuana to treat chronic pain and he used the pipe to smoke marijuana concentrate. On direct and cross-examination, Reinke stated he intended to dispose of the contraband found at the campsite but was unable to do so before police arrived because he had been "running around" and "trying to be a parent" to R.R. During a series of unrecorded sidebars, which were later recited on the record outside of the presence of the jury, the State argued Reinke's statements about parenting R.R. opened the door to the assault allegation. Reinke objected, contending his defense required him to explain why he did not immediately call law enforcement or dispose of the drugs and pipe after discovering them.

6

¶16 Initially, the District Court determined Reinke had not yet opened the door but warned Reinke that he risked doing so if he continued to make gratuitous statements about caring for R.R. when answering what the court characterized as "yes or no" questions. Upon resuming cross-examination after the District Court's warning, Reinke persisted in responding to questions that he was just trying to parent R.R. At that point, the District Court agreed Reinke opened the door. The entirety of the State's cross-examination on the subject was the following:

> STATE: Mr. Reinke, throughout your examination on direct and cross you said a few times that you were just trying to care [for] your son. Isn't it true that the reason why the officers first had contact with you, though, is because you had reportedly assaulted your son?
>
> REINKE: Yes.

¶17 The jury found Reinke guilty of misdemeanor possession of drug paraphernalia and three counts of felony criminal possession of dangerous drugs. At sentencing, Reinke requested the District Court waive the $50 presentence investigation report (PSI) fee and waive or reduce the cost of assigned counsel due to his "financial information listed on page 2 [of the PSI], as well as the fact that Mr. Reinke is in arrears in child support." Based on "the financial situation that is presented in the PSI," the District Court reduced the cost of assigned counsel to $250 but declined to waive the PSI fee.

¶18 We review a district court's decision denying an evidentiary hearing for a clear abuse of discretion. *State v. Tucker*, 2008 MT 273, ¶ 13, 345 Mont. 237, 190 P.3d 1080. "We review the denial of motions to suppress evidence and for dismissal of a criminal charge to determine whether any requisite findings of fact are clearly erroneous, and

7

de novo as to whether the lower court correctly interpreted and applied the governing law." *State v. Staker*, 2021 MT 151, ¶ 7, 404 Mont. 307, 489 P.3d 489 (citations omitted). A district court's evidentiary rulings are reviewed for an abuse of discretion, and related interpretations or applications of law are reviewed de novo for correctness. *State v. Torres*, 2021 MT 301, ¶ 21, 406 Mont. 353, 498 P.3d 1256. "An abuse of discretion occurs when a district court acts arbitrarily or unreasonably, resulting in substantial injustice." *State v. Grimshaw*, 2020 MT 201, ¶ 17, 401 Mont. 27, 469 P.3d 702.

¶19 An alleged violation of a criminal defendant's right to be present at critical stages of the proceeding against him is a constitutional question over which we exercise plenary review. *State v. Wilson*, 2013 MT 70, ¶ 9, 369 Mont. 282, 297 P.3d 1208. We may review an unpreserved right-to-be present claim for plain error or ineffective assistance of counsel. *State v. Reim*, 2014 MT 108, ¶ 40, 374 Mont. 487, 323 P.3d 880; *State v. Zitnik*, 2023 MT 131, ¶ 11, 413 Mont. 11, 532 P.3d 477. Ineffective assistance of counsel claims are mixed questions of law and fact reviewed de novo. *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, 97 P.3d 1095 (citations omitted).

¶20 "We review sentencing conditions, such as the imposition of fines and fees, first for legality and then for abuse of discretion." *State v. Geno*, 2024 MT 142, ¶ 19, 417 Mont. 135, 552 P.3d 51. "A district court's determination as to a defendant's ability to pay is essentially a finding of fact" that we will only reverse upon a showing of clear error. *State v. Dowd*, 2023 MT 170, ¶ 7, 413 Mont. 245, 535 P.3d 645 (citation omitted.)

¶21 Reinke raises the following issues on appeal: (1) whether the District Court abused its discretion by denying his request for a suppression hearing to consider the body camera footage; (2) whether the District Court erred in ruling Reinke's testimony opened the door to the assault allegation; (3) whether Reinke's unpreserved claim that his absence from the conference on the morning of trial violated his right to be present is reviewable for plain error; (4) whether Reinke has established record-based ineffective assistance of counsel claims; and (5) whether the District Court erred in imposing fees and costs without making a specific finding as to Reinke's ability to pay.

¶22 Section 46-13-302(2), MCA, requires the court to conduct an evidentiary hearing "if the [suppression] motion states facts that, if true, would show that the evidence should be suppressed." Section 46-13-302(2), MCA. An evidentiary hearing is not required when the facts are uncontested, and the court need only decide a question of law. *State v. Schulke*, 2005 MT 77, ¶ 28, 326 Mont. 390, 109 P.3d 744.

¶23 Reinke contends he was entitled to an evidentiary hearing under § 46-13-302, MCA, because his motion alleged that Officer Vance's body camera footage undermined the facts described in the affidavit of probable cause. Reinke argues a suppression hearing was required to determine whether probable cause to arrest him for assault existed. The State responds that the District Court did not abuse its discretion in denying a hearing because the fact that Reinke hit R.R. and caused him pain was undisputed, and the body camera footage did not change that.

9

¶24    Reinke asserts that the District Court erred when it refused to consider his justifiable use of force defense and relied on post-arrest facts to support its analysis.  Reinke contends that the District Court's Order conflated Reinke's "challenge to probable cause for *arrest* with his independent challenge to probable cause to, after subsequent investigation, file *charges*." (Emphasis in original.)  To the extent the District Court confined its analysis to the probable cause to charge Reinke, as opposed to arrest Reinke, he is correct.  Nevertheless, "[w]e may affirm the trial court on any ground supported by the record, regardless of its reasoning."    *State v. Wilson*, 2022 MT 11, ¶ 34, 407 Mont. 225, 502 P.3d 679.

¶25    Accepting Reinke's version of events as true does not change the underlying facts supporting his arrest: R.R. reported to Officer Vance that Reinke hit him with an open hand on the chest and buttocks; the physical contact was hard enough to cause R.R. to fall into a tree; R.R. was crying and said the contact caused him pain; and R.R. had visible scratches.  Reinke argues the District Court should have considered the reasonableness of what he terms to be his parental discipline of R.R. when determining whether to grant a hearing.  The use of force by a parent that is "reasonable and necessary to restrain or correct the person's child" is an affirmative defense.  Sections 45-3-107, -115, MCA; *State v. Polak*, 2018 MT 174, ¶ 26, 392 Mont. 90, 422 P.3d 112.   The determination as to whether a defendant was justified in his use of force is a factual determination within the province of the jury.  *State v. Dunfee*, 2005 MT 147, ¶ 34, 327 Mont. 335, 114 P.3d 217.  Whether or not there may have been facts to support an affirmative defense to Reinke's alleged assault

on R.R. does not negate the probable cause for arresting Reinke for the alleged assault in the first instance. *See Dunfee*, ¶¶ 32–34. The District Court did not abuse its discretion in denying Reinke's motion to suppress without a hearing.

¶26 Reinke contends the District Court erred by ruling that Reinke's testimony opened the door to the assault allegation. Under M. R. Evid. 607(a) and 404(a)(1), a defendant's testimony may "open the door" to cross-examination related to inadmissible other acts evidence "by making such evidence relevant for the purpose of explaining or correcting a false impression or assertion, or rebutting an attack on the credibility of another witness." *Torres*, ¶ 33 (citations and internal quotations omitted). Broaching a topic that would otherwise be off limits gives the opposing party the right to offer rebuttal evidence. *State v. Guill*, 2010 MT 69, ¶ 39, 355 Mont. 490, 228 P.3d 1152 (citation and internal quotations omitted). District courts have broad discretion to determine the extent to which a party may respond when the other party opens the door. *Guill*, ¶ 39.

¶27 The District Court admonished Reinke that his continued gratuitous interjection of his efforts to parent and supervise R.R. when answering questions that required only a yes or no response was running the risk of opening the door to the assault allegation. Yet Reinke persisted in his effort to create the impression that he had not disposed of the drugs that he had found because he was too busy parenting R.R. Reinke's testimony made the assault allegation relevant for the purpose of rebutting his implied assertion that Officer Vance arrested an innocent father caring for his son, and to counter his intended impression regarding the reasons he failed to dispose of the drugs. *See State v. McGhee*, 2021 MT 193,

¶ 26, 405 Mont. 121, 492 P.3d 518. The District Court did not err when it concluded Reinke's testimony opened the door to the assault allegation.

¶28 We also are not persuaded by Reinke's argument that he was prejudiced by the admission of the allegation. Although other acts evidence "carries an inherent risk of prejudice," a district court may eliminate or reduce such risk when it limits the scope of the other party's inquiry concerning other acts. *McGhee*, ¶ 16. In this case, the District Court permitted the State to ask Reinke a singular question rebutting Reinke's statements that he was too busy taking care of his son to discard the drugs and pipe he claimed to have found at the campsite. The State responsibly phrased the question in a manner reflecting its relevance as to what happened before Reinke encountered the police. While this limited revelation of the alleged assault may have tarnished Reinke's efforts to portray himself as Ward Cleaver, it hardly portrayed him as Tony Montana. The District Court did not abuse its discretion when it allowed the State to ask this limited question during cross-examination.

¶29 Reinke argues on appeal that his absence from the conference on the morning of trial violated his right to be present. Reinke acknowledges that this matter was not preserved for appeal, but he contends it should be reviewed under the plain error doctrine.[1]

---

[1] Reinke also argues that we need not apply a strict plain error analysis because we have done so "on occasion" to other unpreserved presence claims. *Zitnik*, ¶ 13. However, we also clarified in *Zitnik* that the cited cases did not create an exception to the general rule requiring an objection to presence violations, and we ultimately applied plain error review to Zitnik's claim. *Zitnik*, ¶ 13. We conclude it is appropriate to apply plain error analysis here. *See Reim*, ¶ 40 (holding that if there is no objection made to trial court, defendant must obtain review of a presence claim under "one of the established methods, such as plain error review or an ineffective assistance of counsel claim.").

The United States Constitution and the Montana Constitution guarantee a defendant's right to be present for all critical stages of a criminal proceeding. *State v. Wilson*, 2013 MT 70, ¶ 11, 369 Mont 282, 297 P. 3d 1208. Generally, an objection concerning the violation of a constitutional right must be raised before the trial court to preserve the issue for appellate review. *Reim*, ¶ 38 (citations omitted). In the absence of a timely objection to the trial court, we may review a defendant's right to presence claim for plain error. *Reim*, ¶ 40.

¶30 To obtain plain error review, the defendant must (1) show the alleged error implicates a fundamental right and (2) firmly convince us that declining to review the error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceeding, or compromise the integrity of the judicial process. *Zitnik*, ¶ 12 (citing *Reim*, ¶ 38). When the circumstances fail to satisfy the plain error criteria, we need not address the merits of the alleged error. *State v. Lau*, 2018 MT 93, ¶ 7, 391 Mont. 204, 415 P.3d 993.

¶31 While the State concedes the alleged violation implicates Reinke's fundamental right to be present, Reinke has not persuaded us that plain error review is necessary. Regarding the glass pipe and torch seized from the car, these items were admissible regardless of any stipulation because they formed part of the factual basis for the paraphernalia charge. Those two items also supported his defense that he found the charged drugs at the campsite because he claimed he used the paraphernalia to ingest marijuana concentrate, and not methamphetamine or heroin. As for the redactions of the body camera footage, Reinke has not explained how he might have meaningfully

13

contributed to the parties' determination as to which portions of the body camera video to show or exclude. *State v. Hatfield*, 2018 MT 229, ¶ 34, 392 Mont. 509, 426 P.3d 569. Reinke avers only that if he had been present to hear the discussions regarding the stipulated statement and video redactions intended to avoid bringing the assault allegations to the jury's attention, "[t]his might have led [him] to seek more guidance from counsel on the matter, potentially alerting him to the danger of opening the door to the allegation while testifying." But Reinke did not haphazardly stumble into opening the door of the assault allegation. He opened the door only after being specifically warned by the District Court that his repeated statements about parenting R.R. were treading dangerously close to allowing the State to bring in the assault allegation. It is difficult to conceive of how much more guidance would have been necessary to avoid that eventuality.

¶32 More to the point, the record does not leave us firmly convinced that Reinke's absence from the conference deprived him of the opportunity to intervene when his counsel stipulated to the admission of the marijuana evidence. In *Zitnik*, we exercised plain error review over Zitnik's presence claim because "the lack of any record indicating the court consulted with the parties and Zitnik prior to responding to the jury's questions" satisfied the second prong. *Zitnik*, ¶ 13. But the record in this case reflects that Reinke was well aware that the State and defense counsel would attempt to reach an agreement before trial concerning the evidence he now contends prejudiced him. Reinke was present at the September 15, 2022 pretrial conference where these matters were discussed and the parties informed the court they would confer after the hearing in an effort to resolve the issues

14

concerning the evidence from the car and the body camera video. On the morning of trial, counsel reported to the District Court that they had reached an agreement as to these issues in the interim since the preceding Thursday's conference. There were no contested issues resolved that morning outside of Reinke's presence—only a report to the District Court as to how the various issues had *already* been resolved since the previous conference. These stipulations could just as easily have been reported to the District Court in a written notice and we would be hard-pressed to conclude that Reinke had been prejudicially excluded from a critical stage of a trial proceeding. Reinke has not satisfied his burden to firmly convince this Court that plain error review is warranted as to this claim. *Reim*, ¶ 41.

¶33 Reinke argues his trial counsel was ineffective for failing to: clearly request a suppression hearing and clarify his suppression argument; move to suppress evidence on the alternative basis that the search of his person and the seizure of the tent pipe were illegal; and object to his absence at the conference the morning of trial. The State responds that the errors Reinke alleges are not record-based, and therefore not reviewable on direct appeal.

¶34 The right to effective assistance of counsel is a fundamental right guaranteed by both the United States and Montana Constitutions. *Golie v. State*, 2017 MT 191, ¶ 7, 388 Mont. 252, 399 P.3d 892 (citing U.S. Const. amends. VI, XIV; Mont. Const. art. II, § 24). We review ineffective assistance of counsel (IAC) claims by applying the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail, the defendant must prove both deficiency and prejudice by showing that (1) counsel's

15

representation fell below an objective standard of reasonableness, and (2) absent counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. *State v. Bekemans*, 2013 MT 11, ¶¶ 29–30, 368 Mont. 235, 293 P.3d 843 (citations and internal quotations omitted).

¶35 IAC claims are fact-dependent considerations that require a developed record to review. *State v. Greene*, 2015 MT 1, ¶ 17, 378 Mont. 1, 340 P.3d 551. As a threshold matter, we must determine whether a direct appeal or a postconviction relief hearing is the more appropriate forum for the claim. If, as is usually the case, the record does not disclose the reason for counsel's allegedly deficient act or omission, then the defendant must raise the claim in a petition for postconviction relief. *Kougl*, ¶ 14.

¶36 Reinke's argument concerning counsel's alleged failure to clearly request a suppression hearing fails because we have determined on the merits that the District Court did not abuse its discretion by ruling on his suppression motion without a hearing.

¶37 The record is silent as to why Reinke's counsel did not independently challenge the search incident to arrest and the warrantless seizure of the pipe found in Reinke's tent. Yet this is not a situation where there is no "legitimate reason for what counsel did." *Kougl*, ¶ 15. As the State correctly points out, there are plausible explanations as to why counsel chose not to pursue those arguments. These claims are not susceptible to a record-based ineffective assistance of counsel claim.

¶38 Regarding the stipulations that were reported on the record the morning of trial in Reinke's absence, the record is silent as to the strategy or the process Reinke's counsel

16

engaged in to arrive at these stipulations with the State, and there are plausible reasons for the stipulations. Most fatal to Reinke's claim of record-based ineffective assistance of counsel—although Reinke takes issue with these stipulations on appeal—we cannot discern from the record as to whether his counsel had apprised him of the stipulations prior to reporting them to the District Court on the morning of trial.

¶39 Reinke's ineffective assistance of counsel claims are not susceptible to record-based review.

¶40 Finally, Reinke argues that the District Court clearly erred when it assessed $250 in costs for defense counsel and the $50 PSI fee without directly questioning Reinke about his ability to pay or considering how the fees and costs would impinge on his basic needs.

¶41 Before a court may impose the costs of assigned counsel, the court must consider the defendant's ability to pay. Section 46-8-113(3), MCA. The cost of counsel may be reduced and is determined by "the financial resources of the defendant and the nature of the burden that payment of costs will impose." Section 46-8-113(4), MCA. The court may decline to impose the $50 PSI fee if it determines the defendant is unable to pay within a reasonable time. Section 46-18-111(3), MCA. We have held that a district court must "examine the fee[s] considering a defendant's other financial obligations, employment opportunities, available assets, and any present or future hardship imposing the fee[s] may have." *State v. Hardin*, 2023 MT 132, ¶ 32, 413 Mont. 26, 532 P.3d 466. To the extent that a district court does not articulate specific findings concerning which assets or resources the defendant could utilize to pay costs and fees, such findings may be implied

17

where they are supported by the evidence and the record. *State v. Gable*, 2015 MT 200, ¶ 18, 380 Mont. 101, 354 P.3d 566.

¶42 Notwithstanding the absence of direct questioning of Reinke by the District Court, his counsel at trial and the PSI made it clear that he would be able to afford payment of a limited amount of costs and fees. *See Gable*, ¶ 10 (affirming assessment of defense counsel costs when PSI explored ability to pay and recommended payment of costs despite no direct questioning by district court). Although the District Court did not make a specific finding as to Reinke's ability to pay, the record reflects that Reinke worked part-time as a handyman earning an estimated $500 per month; he owned $2,000 in tools; he had experience working construction; and he lived in a camper he inherited. Based on this evidence, the court partially complied with Reinke's request: it reduced the cost of counsel to $250. The court's comment about the resources given to take the case to trial, but still reducing the costs to $250, is more accurately characterized as recognizing Reinke's limited ability to pay rather than penalizing Reinke for exercising his rights. Moreover, the court declined to impose the $1,000 fine proposed by the State, which indicates the court took "into account the financial resources of the defendant and the nature of the burden" when it imposed the judgment. *State v. McLeod*, 2002 MT 348, ¶ 35, 313 Mont. 358, 61 P.3d 126. The District Court did not clearly err when it assessed $250 in counsel costs and the $50 PSI fee against Reinke.

¶43 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Ingrid Gustafson, specially concurring in part, dissenting in part.

¶44 I concur with the Opinion as to all issues except the affirmance of imposing the $250 in costs for defense counsel and the $50 PSI fee. I do not agree that, despite the District Court's failure to make meaningful inquiry into Reinke's ability to pay said fees, the record makes it clear he would be able to afford payment of a limited amount of costs and fees. The Opinion, in essence, concludes that since "Reinke worked part-time as a handyman earning an estimated $500 per month; he owned $2,000 in tools; he had experience working construction; and he lived in a camper he inherited[,]" he could afford the defense and PSI report costs ordered by the District Court.

¶45 Here, the record establishes Reinke was represented by a public defender which in itself implicates indigency. To qualify for public defender representation, a defendant must complete an application providing detailed financial information. Pursuant to § 47-1-111(3), MCA:

19

An applicant is indigent if: (a) the applicant's gross household income is at or less than 133% of the poverty level set according to the most current federal poverty guidelines updated periodically in the Federal Register by the United States department of health and human services under the authority of 42 U.S.C. 9902(2); or
(b) the disposable income and assets of the applicant and the members of the applicant's household are insufficient to retain competent private counsel without substantial hardship to the applicant or the members of the applicant's household.

¶46 The record establishes Reinke to have annual earnings of $6,000 which is less than half of the federal $14,580 poverty level for an individual in 2023, and clearly well below 133% of the federal poverty level. *Federal Poverty level*, HealthCare.gov, https://www.healthcare.gov/glossary/federal-poverty-level-fpl/ [https://perma.cc/4VDB-T547] (last visited Dec. 5, 2024).

¶47 While Reinke apparently has some construction tools valued at $2,000, in order to maintain his construction income, he would not reasonably be able to sell the tools. Further, the fact that he resides in an inherited camper does not indicate financial ability to pay for either the cost of counsel or the PSI fee assessed. The Opinion implies that since the District Court reduced the requested financial assessments against Reinke that it did not err in assessing these lowered financial obligations. But merely imposing a lesser financial obligation than that requested by the State, is not "examin[ing] the fee[s] considering a defendant's other financial obligations, employment opportunities, available assets, and any present or future hardship imposing the fee may have." *State v. Hardin*, 2023 MT 132, ¶ 32, 413 Mont. 26, 532 P.3d 466. The District Court failed to make meaningful inquiry into Reinke's work and earnings abilities, his financial obligations, and

20

any present or future hardship imposing any fees and costs may have. Based on the record before us, Reinke is indigent and does not have the financial ability to pay the costs assessed against him. As such, I would reverse the imposition of the $250 counsel fee and $50 PSI fee.

¶48    I concur with the Court's resolution of the remaining issues.

/S/ INGRID GUSTAFSON

Justice Laurie McKinnon joins the Special Concurrence and Dissent of Justice Ingrid Gustafson.

/S/ LAURIE McKINNON