FILED

04/28/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0549

DA 17-0549

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 100

STATE OF MONTANA,

Plaintiff and Appellee,

v.

MELANIE DAWN CLAUSEN,

Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC 16-70
Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Michael Marchesini, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

Wyatt A. Glade, Custer County Attorney, Michael Elmore, Deputy County
Attorney, Miles City, Montana

Submitted on Briefs:  February 19, 2020

Decided:  April 28, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Melanie Dawn Clausen appeals from her conviction in the Sixteenth Judicial District Court, Custer County, on one count of Criminal Possession of Dangerous Drugs, Methamphetamine, a felony violation of § 45-9-102, MCA; one count of Criminal Possession of Dangerous Drugs, Marijuana, a misdemeanor violation of § 45-9-102, MCA; and one count of Criminal Possession of Drug Paraphernalia, a misdemeanor violation of § 45-10-103, MCA.  We address the following restated issues on appeal:

> *1. Whether the District Court properly allowed testimony concerning Clausen's prior DUI convictions; and*
>
> *2. Whether this Court should exercise plain error review on Clausen's claim of prosecutorial misconduct during closing arguments.*

¶2      We reverse and remand the case to the District Court for a new trial on Issue 1.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3      In October 2015, Clausen was driving home to Helena, when she saw David Tufton hitchhiking on the side of the highway outside of Butte.  Clausen did not know Tufton but decided to stop and pick him up.  They "hit it off" and she agreed to drive Tufton to Sidney, Montana—an eight to nine-hour drive from Helena.  They spent that night at a hotel in Billings.  Tufton could not remember who packed their bags and put them in the car the next morning, but Clausen testified Tufton packed both of their bags while she showered. With their belongings loaded back in the car, Clausen and Tufton continued on their way.

¶4      Later that day, Sergeant Troy Muri of the Montana Highway Patrol pulled Clausen over for speeding outside Miles City.  Muri approached the passenger side window of the vehicle to avoid any passing traffic.  Muri could smell alcohol while standing at the

2

passenger side window but could not determine whether the smell was coming from Clausen or Tufton. Clausen, who was driving, could not produce her driver's license but did produce the vehicle's registration, which showed the vehicle was a rental. Clausen also could not produce the rental agreement but told Muri she had rented the vehicle in Helena with her father. Muri asked Clausen to come back to his vehicle in an effort to separate Clausen and Tufton and determine the source of the alcohol smell. Back in his vehicle, Muri looked Clausen up in his computer and discovered her driver's license was suspended. As such, she could not legally continue to drive the vehicle. Tufton's license was also suspended and he could not legally drive the vehicle. The closest town, Miles City, was over fifteen miles away. Clausen did not know anyone in the area who could come retrieve her and the vehicle.

¶5 Muri left Clausen in his patrol vehicle and returned to talk to Tufton. Tufton told Muri he was on probation. During this conversation, Muri determined the alcohol smell was emanating from Tufton. Muri returned to his vehicle. At that point, Muri asked Clausen if she had ever been arrested. She told him that she had a DUI. Muri believed Clausen was being untruthful because he could tell from his review of her driving record on his computer that she had a felony DUI. Muri then contacted Tufton's probation officer and confirmed alcohol consumption was a violation of Tufton's probation conditions. The probation officer authorized a search of Tufton's belongings and ordered a portable breath test be conducted on Tufton. Muri issued Clausen a citation for driving while her license was suspended and gave her a warning for speeding. He told her he was going to be searching Tufton's belongings and asked her for consent to search her belongings as well,

3

but she declined. By this time, Trooper David Moon, an officer with a K9 unit, had arrived at the scene. The two officers searched Tufton's belongings but uncovered no illegal items. After waiting the twenty minutes required for accurate testing, the officers administered the portable breath test on Tufton and confirmed he had been drinking. Muri arrested Tufton for probation violations.

¶6     Based on his interactions with Tufton and Clausen to this point, Muri determined he had particularized suspicion to run Moon's K9 unit around the vehicle. Before running the dog, Muri asked Clausen if there were any drugs in the vehicle. She told him there might be a little bit of marijuana. The K9 unit alerted on the vehicle and Muri impounded the vehicle. Officers searched the vehicle the next day pursuant to a search warrant. They recovered a marijuana cigarette in a pack of cigarettes in the console of the vehicle; marijuana and rolling papers in a black purse on the backseat; a pink sunglasses case with a glass pipe typically used to smoke methamphetamine and some plastic baggies with white residue from the front seat area; a black case with a green mustache with another glass pipe typically used to smoke methamphetamine; a black plastic scale that appeared to have a crystalline residue on it in Clausen's suitcase in the trunk; and a spoon with residue and two syringes in a box in the trunk. The pipe from the pink sunglasses case and the black scale were sent to the state crime lab for testing and both came back positive for methamphetamine. Tufton and Clausen were both charged with possession of the drugs and paraphernalia. Tufton pleaded no contest to the charges and testified against Clausen at her trial.

¶7      At trial, during the State's case-in-chief, the District Court dismissed the jury during Muri's testimony before he testified about his conversation with Clausen regarding her prior arrests. Clausen's attorney argued the evidence of Clausen's prior DUIs should not be admitted under M. R. Evid. 403 and 404(b). The court ruled that neither party could use the word "felony" to characterize Clausen's prior criminal history, but the State could elicit testimony that Clausen minimized her criminal history and stated she had one DUI when she had at least four DUIs. The court gave a cautionary instruction to the jury before Muri's testimony continued:

> Melanie Dawn Clausen is on trial only for the offenses charged in this case. Evidence of other acts alleged to have been committed by Ms. Clausen in the past that have not been charged in this case may not be considered in your deliberations except as I authorize you to do so. In other words, you may not infer that because the Defendant may have engaged in other acts in the past that she is guilty of any of the offenses charged through this proceeding.
> Along with all the other evidence in the case, evidence of other acts attributed to Ms. Clausen may be considered only for the limited purpose of aiding the jury to discern her credibility. Ms. Clausen is not being tried for that other charge. She may not be convicted for any other offense than that charged in this case. For the jury to convict Ms. Clausen of any other offense than the offenses charged in this case may result in unjust double punishment.

The District Court repeated this cautionary instruction when instructing the jury before deliberations.

¶8      Back on the stand, Muri testified Clausen "said that she had a previous DUI, and running her record I noticed that she had at least four DUIs." The State then walked Muri through the interaction again "to make sure I understand you correctly," and had Muri repeat that Clausen had multiple prior DUIs. On redirect, the State elicited testimony from Muri that Clausen was "dishonest" and "just trying to minimize her involvement in

5

everything." Later, during its cross-examination of Clausen, the State asked, "You weren't completely forthcoming and honest with Trooper Muri about your prior DUI convictions, were you?" Clausen responded "No. That's not something you go around telling everybody. I knew that he could look it up anyway." The State asked further "Ms. Clausen, you actually made some other statements to the Court that weren't honest either, correct?" to which Clausen objected and after argument, the court directed the jury to disregard the question. The State emphasized Clausen's DUI record again during its closing arguments, arguing "The point is not that she had convictions for DUI. The point is that she was not honest with Trooper Muri, and he became suspicious."

¶9     During closing and rebuttal arguments, the prosecutor asserted Tufton was a credible witness stating: "He was part of this. He is going to be held accountable for his actions as well. He's taken his lumps. He told—he testified to you. You will be the judge of his credibility and whether he had some reason to lie at this point." The prosecutor went on to explain that "Mr. Tufton has denied ever seeing this scale and has very little to gain from lying at this point." During rebuttal, the prosecutor again emphasized Tufton's credibility:

> David Tufton is an easy fall guy. He's a scary looking guy. He's a big guy. He's got a scorpion on this neck. Tattoos everywhere. I can see that as a pretty viable defense if I were accused of the crimes that Ms. Clausen is accused of.
> Honestly, the State is in a very unusual position to be defending Mr. Tufton, but I will tell you this. What I told you earlier that Mr. Tufton has no reason to lie and that you should consider that when you consider his testimony, I want to tell you what I mean by that.
> Both Ms. Clausen and Mr. Tufton got charged with possession of these items. Now you could tell by Mr. Tufton's demeanor, he's not happy about that. He didn't plead guilty. He pled no contest to this because he felt like he was getting the benefit of a bargain. But pleading no contest is – has,

essentially, the same effect as pleading guilty. He's going to be sentenced tomorrow.

So under those circumstances, in considering this is the evidence that was going to be offered against him, he has absolutely no reason to lie about this evidence because he's already going to be held accountable for his actions that are connected with this evidence. He has nothing to gain out of lying. And, obviously, he was not real happy about testifying in this case.

¶10 The jury found Clausen guilty on all three counts charged. The court sentenced her to five years, with two suspended, for possession of methamphetamine and to six months, all but time served suspended, on the other two counts to all run concurrently. Clausen appeals.

## DISCUSSION

¶11 *1. Whether the District Court properly allowed testimony concerning Clausen's prior DUI convictions.*

**Standard of Review**

¶12 We review evidentiary rulings for an abuse of discretion. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811.

**Analysis**

¶13 Clausen argues the District Court erred in allowing Muri to testify that Clausen had at least four DUI convictions. She asserts the State did not use the evidence of her past DUI convictions for any permissible purpose, but rather to attack her character, in violation of M. R. Evid. 403 and 404(b). She urges that the court's cautionary instruction could not cure the prejudice caused by telling the jury she had at least four DUI convictions.

¶14 As a preliminary matter, Clausen and the State disagree about the standard of review this Court should apply in reviewing her challenge under Rule 403. Clausen argues the District Court's reasons for rejecting her Rule 403 challenge to the DUI evidence are not

7

apparent from the record and, therefore, this Court must examine the record and balance the factors de novo, citing *State v. Clifford*, 2005 MT 219, ¶ 52, 328 Mont. 300, 121 P.3d 489. The State counters this Court should review the evidentiary ruling for an abuse of discretion because the District Court impliedly balanced any prejudice under Rule 403 by dismissing the jury before taking argument from the parties about admission of the testimony and formulating and giving a cautionary instruction to the jury.

¶15 We agree with the State that the record shows the District Court engaged in some balancing of the probative value of the testimony against its risk of unfair prejudice to Clausen. The court explained the jury "could misinterpret" the testimony and "want[ed] them to have a cautionary instruction that gives them some perspective of what they can and cannot use this information for." Thus, we will review the District Court's ruling for an abuse of discretion.

¶16 Generally, relevant evidence is admissible. M. R. Evid. 402. Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." M. R. Evid. 403. "[U]nfair prejudice refers to the degree the jury might impermissibly rely on the intermediate inference of propensity. Even if evidence is potentially unfairly prejudicial, the Rule 403 balancing test favors admission—the risk of unfair prejudice must substantially outweigh the evidence's probative value." *State v. Reopelle*, 2017 MT 196, ¶ 24, 388 Mont. 271, 399 P.3d 903 (internal quotations omitted).

¶17 Upon review of the record, we conclude the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The State gave two reasons why Clausen's prior DUI convictions were relevant and probative to the issue whether

8

Clausen possessed the drugs and paraphernalia in the vehicle. First, she misled Muri about the number of prior arrests she had, which added to his particularized suspicion that Clausen was engaged in criminal activity and justified the running of a K9 unit around the vehicle. Second, the evidence attacked Clausen's credibility, because it was evidence that Clausen lies. Neither one of these uses provided the State with much, if any, probative value to any material issues in the case.

¶18 Particularized suspicion was not at issue at the time of trial. In its pretrial order denying Clausen's motion to dismiss, the District Court had already determined that Muri had particularized suspicion to run the K9 unit. As such, particularized suspicion was not a trial issue. Further, the State elicited the highly prejudicial DUI evidence during its case-in-chief. Clausen's credibility was not at issue before she took the stand. Contrary to the State's argument, Clausen did not open the door to her credibility in her opening argument. In Clausen's opening argument, her counsel asserted Clausen did not know Tufton brought drugs into her car and the State would not put on enough evidence to prove all the elements of the charges beyond a reasonable doubt. Her counsel did not assert Clausen would testify on her own behalf in the opening argument. The court abused its discretion in allowing Muri to testify about whether Clausen was credible in the State's case-in-chief. The court's cautionary instruction—rather than cautioning the jury against misuse of the testimony—tended to suggest there was a problem with Clausen's credibility before she had ever taken the stand.

¶19 On the other side of the scale, the danger of unfair prejudice from the evidence weighs heavily. It is likely the jury would use evidence of Clausen's prior DUI convictions

to infer the drugs in the vehicle belonged to Clausen. The evidence implied Clausen was a habitual criminal offender with substance use issues that made her "more likely than people generally to have committed the charged offense[s]." *State v. Rogers*, 2013 MT 221, ¶ 32, 371 Mont. 239, 306 P.3d 348 (quoting *Derbyshire*, ¶ 22). The District Court abused its discretion in admitting the evidence because its probative value was substantially outweighed by its risk of unfair prejudice and was, thus, inadmissible under Rule 403.

¶20 Because we determine the probative value of the evidence, if any, was substantially outweighed by the danger of unfair prejudice, we do not consider Clausen's further arguments under Rule 404(b).

¶21 *2. Whether this Court should exercise plain error review on Clausen's claim of prosecutorial misconduct during closing arguments.*

**Standard of Review**

¶22 Generally, this Court does not address issues of prosecutorial misconduct relating to a prosecutor's statements during closing arguments when those statements are not objected to at trial. *State v. Ritesman*, 2018 MT 55, ¶ 12, 390 Mont. 399, 414 P.3d 261. Nonetheless, this Court may exercise its discretion and review such issues under our inherent power of common law plain error review sparingly, on a case-by-case basis, and only in a narrow class of cases. *Ritesman*, ¶ 12.

**Analysis**

¶23 Clausen challenges statements the prosecutor made during closing arguments that Tufton "has very little to gain from lying at this point," "has no reason to lie," "has absolutely no reason to lie about this evidence," and "has nothing to gain out of lying," because "pleading no contest . . . has, essentially, the same effect as pleading guilty."

10

Clausen maintains the prosecutor inappropriately gave his personal opinion as to Tufton's credibility that was not rooted in facts. At the time of Clausen's trial, Tufton was yet to be sentenced and risked putting his plea deal in jeopardy with his testimony because unlike a guilty plea, a no contest plea does not entail an admission of factual guilt. Clausen argues these comments were particularly damaging as her defense hinged on her ability to convince the jury to believe her testimony over Tufton's testimony. Thus, the prosecutor's inappropriate vouching for Tufton's credibility prejudiced her right to a fair trial.

¶24 Under the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and Article II, Section 24, of the Montana Constitution, criminal defendants are guaranteed a fair trial. *Ritesman*, ¶ 21. When reviewing claims of prosecutorial misconduct, we consider whether prosecutor's statements were improper and whether they prejudiced the defendant's constitutional right to a fair trial. *Ritesman*, ¶ 21.

¶25 During trial, Clausen did not object to the statements she now challenges on appeal. Generally, this court will not review an issue raised for the first time on appeal. Under the plain error doctrine, however, "this Court may discretionally review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made." *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996). This Court will invoke the plain error doctrine "to correct an error not objected to at trial that affects the 'fairness, integrity, and public reputation of judicial proceedings.'" *State v. Lawrence*, 2016 MT 346, ¶ 9, 386 Mont. 86, 385 P.3d 968 (quoting *Finley*, 276 Mont. at 134, 915 P.2d at 213). The plain error doctrine applies "in situations

11

that implicate a defendant's fundamental constitutional rights," and where "failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506 (quotations omitted).

¶26 Given that we are already reversing the case for a new trial, there is no need for us to engage in plain error review.

**CONCLUSION**

¶27 Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR