FILED

01/25/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0581

DA 19-0581

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 20N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

SCOTT W. ELLISON,

Defendant and Appellant.

FILED

JAN 25 2022

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-18-306
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Kathryn Hutchison, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

Joshua A. Racki, Cascade County Attorney, Ryan Ball, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  December 8, 2021

Decided:  January 25, 2022

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Scott W. Ellison appeals an Eighth Judicial District Court Judgment and Sentence affirming a jury verdict finding Ellison guilty of three counts of Incest in violation of § 45-5-507, MCA, two counts of Sexual Intercourse Without Consent in violation of § 45-5-503, MCA, and one count of Indecent Exposure (Minor Under 16 Years of Age) in violation of § 45-5-504(3), MCA. Ellison argues that the State's charging decision to not name a victim for the indecent exposure count violated his due process right to be apprised of the nature of the charges against him, which in turn casts doubt on whether the jury was unanimous about determining the victim of the crime and implicates double jeopardy concerns. He also argues that during the trial the prosecutor elicited improper testimony and committed several instances of prosecutorial misconduct. We affirm.

¶3 In 2016, Ellison and his wife T.E. adopted four children they had previously fostered: two boys, J.E. and K.E., and two girls, O.E. and B.E. In 2018, then twelve-year-old J.E. ran away from home. J.E. soon returned home but was reluctant to tell T.E. why he ran away. Two days later, however, T.E. found a note written by J.E. in which he stated he believed Ellison raped his sister, O.E. When confronted by T.E., Ellison eventually

2

admitted that he had masturbated in front of J.E. and while in bed with O.E., B.E., and K.E. on several different occasions. Ellison immediately moved out of the house, and police opened an investigation regarding the disclosures.

¶4 The children were forensically interviewed; O.E. and B.E. disclosed additional instances of sexual abuse while K.E. did not make any disclosures. Ellison admitted to law enforcement that he had masturbated while in bed with the children but argued they could not have seen what he was doing. Ellison was initially charged with one count of incest, and one count of indecent exposure to a minor. In the coming months, however, K.E. and O.E. made further disclosures of sexual abuse, resulting in an eventual second amended information. This information charged Ellison as follows: Count I, Incest, in violation of § 45-5-507, MCA, with J.E. as the victim; Count II: Indecent Exposure (Minor Under 16 Years of Age)[1] (hereinafter "indecent exposure"), in violation of § 45-5-504(3)(a), MCA, with no named victim; Count III, Incest, in violation of § 45-5-507, MCA, with K.E. as the victim; Count IV, Sexual Intercourse Without Consent, in violation of § 45-5-503, MCA, with K.E. as the victim; Count V, Sexual Intercourse Without Consent, in violation of § 45-5-503, MCA, with O.E. as the victim; and Count VI, Incest, in violation of § 45-5-507, MCA, with O.E. as the victim.

¶5 Ellison elected for a jury trial. At the trial, the State called all four children to testify, and each child testified to various instances of sexual abuse. This included B.E., who,

---

[1] All four children were under sixteen years of age during the relevant time period.

despite not being a named victim in the second amended information, testified that Ellison made her and O.E. stand naked with him in a shower and that she saw "his privates." Several of the children's counselors also testified as expert witnesses regarding the children's emotional and mental health issues. Tracy Hemry, the forensic interviewer, and Agent Noah Scott, a detective with the Department of Justice who observed the forensic interviews and interviewed Ellison, also testified. The jury found Ellison guilty on all six counts. The District Court sentenced Ellison to the maximum 100-year prison term on every count, with none suspended, all to be served consecutively.

¶6 We generally do not review on appeal issues not objected to at trial. *State v. Lacey*, 2012 MT 52, ¶ 14, 364 Mont. 291, 272 P.3d 1288 (citation omitted). Under the plain error doctrine, however, "we may choose to exercise discretionary . . . review where the alleged error may result in a manifest miscarriage of justice, leaves unsettled questions of fundamental fairness, or compromises the integrity of the judicial process." *State v. Wells*, 2021 MT 103, ¶ 13, 404 Mont. 105, 485 P.3d 1220 (citation omitted). Plain error review is employed sparingly, on a case-by-case basis, only in the aforementioned narrow circumstances, and by considering the totality of the circumstances. *State v. Haithcox*, 2019 MT 201, ¶ 23, 397 Mont. 103, 447 P.3d 452 (citations omitted); *State v. Godfrey*, 2004 MT 197, ¶ 22, 322 Mont. 254, 95 P.3d 166 (citations omitted). "[A] mere assertion that constitutional rights are implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error

4

doctrine." *State v. Gunderson*, 2010 MT 166, ¶ 100, 357 Mont. 142, 237 P.3d 74 (citation omitted).

¶7 Ellison first contends he was denied due process of the law because the second amended information was insufficient to inform him of the nature of the charge contained in Count II, indecent exposure, prejudicing his defense. Ellison notes the information did not name a victim for Count II, while the information's accompanying affidavit contained separate allegations that Ellison exposed himself to both J.E. and B.E., the latter who was not explicitly named as a victim in any of the six charged counts. Ellison then points to a series of representations made by the State which he claims establishes a deliberate effort by the State to prejudice his defense and admit otherwise inadmissible evidence.

¶8 Pertinently, during its examination of T.E., and just before its examination of B.E., the State represented to the District Court that B.E. is "part of that Count II, indecent exposure," after which the District Court allowed T.E.'s examination to continue with regard to indecent exposure as to B.E. The State called B.E. next, and her testimony was sufficient to meet the elements of the indecent exposure charge. The rest of the children then testified—each of whose testimony also, in one way or another, established that Ellison indecently exposed himself to each of them on various occasions. Next, during the settling of jury instructions, the State represented that "instead of charging four separate [indecent exposure] counts, we just did one count" to which Ellison's attorney responded, "that's fine." The District Court, however, ensured that the following unanimity instruction was included with the indecent exposure instructions:

5

> Defendant is charged in Count II of the information with the crime of Indecent Exposure to a Minor, a violation, on or about a period of time between January 1, 2017, and April 30, 2018. In order to find the Defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act or acts constituting the crime within the period alleged. Also, in order to find the Defendant guilty, you must unanimously agree upon the commission of the same specific act or acts constituting the crime within the period alleged. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

Finally, at the end of sentencing and in the context of the District Court ordering Ellison to have no contact with the victims, the District Court stated: "Ellison is to have no contact with any of the three kids that were the victims in this case. We have three kids who were victims, right, or am I missing a fourth?" To which the State responded that "the fourth was not charged."

¶9 A charging document must contain the elements found in § 46-11-401(1), MCA. Notably, a definitive assertion of an alleged victim is *not* a necessary statutory element. *See* § 46-11-401(1), MCA. Beyond these statutory requirements, however, "[a] criminal charge must allow a person of common understanding to know what is intended . . . and must give the defendant 'reasonable notice' of the charges so as to avoid being charged twice for the same offence." *State v. Goodenough*, 2010 MT 247, ¶ 20, 358 Mont. 219, 245 P.3d 14 (citing *State v. Riley*, 199 Mont. 413, 421, 649 P.2d 1273, 1277 (1982); *State v. Parker*, 1998 MT 6, ¶ 28, 287 Mont. 151, 953 P.2d 692) (internal citations omitted).

¶10 Here, the charging documents fulfill the statutory requirements of § 46-11-401(1), MCA, and the affidavit accompanying the second amended information establishes either directly or through the implicit nature of the alleged sexual abuse that Ellison exposed

6

himself to each of the four children. To that end, the indecent exposure charge against Ellison was clear—he was charged with one count of indecent exposure to a minor under sixteen years of age, in violation of § 45-5-504(3)(a), MCA, which occurred on or between January 1, 2017, and April 30, 2018, with J.E., K.E., O.E., and B.E as possible victims. Ellison never objected to or challenged this charging information as vague or unclear, and when at trial the State explained its reasoning behind the charge, Ellison's attorney responded "that's fine" to the State's explanation. And, despite the State representing that the alleged misconduct relating to B.E. was "not charged," this statement occurred during *sentencing*, and therefore could not have impacted Ellison's defense at trial. This record assures us Ellison had "reasonable notice" of the charges against him. *Goodenough*, ¶ 20.

¶11 We likewise conclude the charge is clear enough for Ellison "to avoid being charged twice for the same offence." *Goodenough*, ¶ 20. Ellison argues that because there was no victim listed for Count II, the jury was not required to name one in its verdict, and there were four possible victims, he is neither assured that the jury was unanimous in finding all the elements of the charge met for a single victim nor that he can effectively argue double jeopardy in a potential future prosecution. The District Court, however, included a specific unanimity instruction for Count II, and we presume the jury followed this instruction. *See State v. Redlich*, 2014 MT 55, ¶ 22, 374 Mont. 135, 321 P.3d 82 (citations omitted). Moreover, Ellison's argument that the jury "could not know which victim [it] was supposed to be unanimous about" is speculative—the jury had ample evidence establishing Ellison exposed himself to all four children, and pursuant to the jury instructions could decide for

7

itself on a given victim and the "same specific act or acts constituting the crime within the period alleged" relative to that victim.

¶12 We find Ellison's argument that he is exposed to potential double jeopardy speculative and unpersuasive. A criminal charge must provide sufficient notice of the crime so as to avoid the defendant being charged twice for the same offence. *Goodenough*, ¶ 20 (citations omitted). As mentioned above, Count II sufficiently stated a time period during which the offense took place and the nature of the offence. The record further establishes that while the State could have charged four counts of indecent exposure, it instead chose to only charge one count with any of the four children as a possible victim. This was the State's decision to make, and such a decision forecloses its ability to again charge Ellison with a violation of § 45-5-504(3)(a), MCA, occurring on or between January 1, 2017, and April 30, 2018, with J.E., K.E., O.E., and B.E as possible victims.[2] We therefore cannot conclude that failing to exercise plain error review of the State's charging decisions would "result in a manifest miscarriage of justice, leave[] unsettled questions of fundamental fairness, or compromise[] the integrity of the judicial process." *Wells*, ¶ 13 (citation omitted).

¶13 Ellison next argues that the prosecutor's repeated misconduct deprived him of a fair trial. The Sixth Amendment of the United States Constitution and Article II, Section 24,

---

[2] While the State did represent at the end of the sentencing hearing that "the fourth [child] was not charged," in context this statement clearly references the fact that B.E. was not named as a specific victim for any charge. As discussed above it is abundantly clear that B.E. was considered a possible victim relative to the indecent exposure charge.

of the Montana Constitution protect a criminal defendant's right to a fair trial by jury. *State v. Hayden*, 2008 MT 274, ¶ 27, 345 Mont. 252, 190 P.3d 1091. Ellison argues the State violated this right because the prosecutor "improperly elicited testimony to bolster the credibility of the complaining child witnesses" when the State asked Hemry and Agent Scott to "weigh in on the inconsistencies between each child's statements" and when it asked Agent Scott to comment on what the State characterized as Ellison "hedging" during his custodial interview. Notably, however, Ellison's trial counsel objected to these lines of questioning, the District Court sustained the objections, and the jury was instructed not to speculate as to what a witness may have answered in response to a sustained objection. Plain error review is appropriate to review issues *not* objected to on appeal. *See Wells*, ¶ 13 (citation omitted). Because Ellison's attorney *did* object here, and his objections were sustained, plain error review is not appropriate, and since Ellison provides no evidence to the contrary, we presume the jury followed the given instructions. *State v. Sinz*, 2021 MT 163, ¶ 31, 404 Mont. 498, 490 P.3d 97.

¶14 In his reply brief, Ellison expands upon this argument and claims that the prosecution elicited some "bolstering" witness testimony before Ellison's sustained objections were made.[3] While he argues this testimony was improperly elicited, Ellison

---

[3] In his reply brief, Ellison for the first time also argues that expert testimony from O.E.'s counselor, Raelynne McCurdy, was improperly admitted over Ellison's objections at trial. Ellison claims this witness testimony improperly vouched for the witnesses' credibility. Ellison, however, raises the issue relating to this testimony for the first time in his reply brief, and we therefore decline to address it. *See Pengra v. State*, 2000 MT 291, ¶ 13, 302 Mont. 276, 14 P.3d 499.

9

makes no argument as to how this testimony results "in a manifest miscarriage of justice, leaves unsettled questions of fundamental fairness, or compromises the integrity of the judicial process." *Wells*, ¶ 13 (citation omitted). And in light of the substantial admissible evidence and testimony establishing Ellison's guilt—including several incriminating, remorseful notes he left the family, video recordings he made expressing his contrition, and his recorded custodial interview—we cannot conclude that failure to exercise plain error review of the testimony at issue would result in "a manifest miscarriage of justice, leave[] unsettled questions of fundamental fairness, or compromises the integrity of the judicial process." *Wells*, ¶ 13 (citation omitted).

¶15 Finally, Ellison argues that in the State's closing argument the prosecutor personally vouched for the truthfulness of the children's testimony, urged conviction based on victim sympathy, and improperly represented the infallibility of the State's case. Specifically, Ellison claims that by telling the jury, "we all know. We all know that [J.E.] was telling the truth that Scott Ellison did this," and "You saw [O.E.'s] forensic interview. You heard her testify. This happened to her," the prosecutor improperly told "the jurors what was true and what was not," and informed the jury that there was "no doubt at all" that Ellison was guilty. And by repeatedly referencing the children's status as adoptees and their return to therapy, Ellison argues the prosecutor improperly attempted to gain a conviction based on victim sympathy.

¶16 "It is the 'jury's purpose and duty to decide if the State has proved the defendant's guilt beyond a reasonable doubt, based on the facts presented . . . .'" *State v. Smith*, 2021

10

MT 148, ¶ 49, 404 Mont. 245, 488 P.3d 531 (quoting *State v. Ritesman*, 2018 MT 55, ¶ 27, 390 Mont. 399, 414 P.3d 261). To that end, it is improper for a prosecutor to personally vouch for witnesses' testimony or offer his own personal opinion on witnesses' credibility. *Smith*, ¶ 43. A prosecutor may, however, offer general comments on "the gravity of the crime charged, the volume of evidence, credibility of witnesses, inferences to be drawn from various phases of evidence, and legal principles involved in the instructions to the jury." *Smith*, ¶ 43 (citation, internal quotation marks omitted). In the full context of the trial, that is what happened here. The prosecutor made the "vouching" comments Ellison takes issue with during his rebuttal argument, *after* Ellison's attorney had called into question the children's truthfulness in Ellison's closing argument. Moreover, because testimony at trial established that the children made certain disclosures of abuse in an arguably inconsistent manner, it was proper for the prosecutor to argue to the jury that the children were credible overall and that the jury could infer Ellison's guilt from their testimony. *See Smith*, ¶ 47. The prosecutor's references to the children's status as adoptees and their renewed need for therapy likewise properly addressed potential defects in the children's testimony regarding why some disclosures weren't made in initial interviews and as rebuttal to Ellison's closing argument that the children were exaggerating their claims. *See Ritesman*, ¶ 28 (citation omitted). Because of this, we cannot say the alleged unobjected to errors "may result in a manifest miscarriage of justice, leave[] unsettled questions of fundamental fairness, or compromise[] the integrity of the judicial process" and decline to exercise plain error review. *See Wells*, ¶ 13 (citation omitted).

11

¶17　We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. For the foregoing reasons, the District Court's Judgment and Sentence is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices